UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>FALGUN DHARIA,<br><br>　　　　　　Defendant. | 14-CR-390 & 15-CR-367<br>Statement of Reasons Pursuant<br>to 18 U.S.C. § 3553(2) |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 1 3 2018 ★
BROOKLYN OFFICE

JACK B. WEINSTEIN, Senior United States District Judge:

Appearances

　For United States:

　　Jacquelyn M. Kasulis
　　United States Attorney's Office, EDNY
　　271 Cadman Plaza East
　　Brooklyn, NY 11201

　For Defendant:

　　Robert S. Wolf
　　600 Lexington Avenue
　　9th Floor
　　New York, NY 10022

Table of Contents

I. Introduction ..................................................................................................................2
II. Facts ............................................................................................................................2
　a. Business Background and Houlihan's-related Fraud..................................................2
　b. Other Restaurant-related Fraud ..................................................................................3
　c. Hotel-related Fraud in Florida and Pennslyvannia ....................................................4
　d. False Statement in a Tax Return .................................................................................4
　e. Obstruction of Justice ..................................................................................................4
　f. Conspiracy to Commit Mail Fraud .............................................................................5

1

    g.    Guilty Plea ...................................................................................................... 5

    h.    5K1.1 Letter .................................................................................................. 6

    i.     Sentencing .................................................................................................... 7

III.    Offense Level, Category, and Sentencing Guidelines Range ............................. 8

IV.    Law ....................................................................................................................... 9

    a.    Minimum Guidelines .................................................................................. 9

    b.    5K1.1 Letter .................................................................................................. 9

V.    18 U.S.C. § 3553(a) Considerations ..................................................................... 9

VI.    Sentence ............................................................................................................. 10

VI.    Conclusion ......................................................................................................... 10

I. Introduction

Falgun Dharia ("Dharia" or "Defendant") pled guilty to two counts of bank fraud, one count of false statements in a tax return, one count of obstruction of justice, and one count of conspiracy to commit mail and wire fraud. Presentence Investigation Report ("PSR") ¶¶ 1-5.

He has admitted his widespread criminal conduct adversely affecting government institutions and many people. But he cooperated extensively with government. For his assistance, he received a 5K1.1 letter from the government suggesting a lenient sentence with respect to incarceration.

II. Facts

A prior opinion on restitution explained the precise counts of conviction. *See United States v. Dharia*, No. 14-CR-390, 2018 WL 357281 -- F.Supp.3d-- (E.D.N.Y. Jan. 10, 2018).

    a. Business Background and Houlihan's-related Fraud

In 1994, Dharia began developing convenience stores, restaurants, and hotels. PSR ¶ 11. He was successful as a Dunkin' Donuts franchisee in the early 2000s, eventually garnering an ownership interest in over 50 locations throughout New York, New Jersey, Pennsylvania, and Connecticut. PSR ¶ 11. Around 1999, Dharia formed an entity known as Mantiff Management.

2

PSR ¶ 12. The restaurant chain Houlihan's was identified as a business opportunity in 2003. PSR ¶ 12.

Defendant sought a small business administration ("SBA") loan to cover the $1.5 million of construction costs remaining after investments from himself and his business partners at AFHK Brooklyn Restaurant, LLC ("AFHK"). PSR ¶ 15. AFHK hired Nirav Mehta ("Mr. Mehta"), a loan broker, to handle their SBA loan application. PSR ¶ 16. Mr. Mehta's loan application was denied because AFHK lacked restaurant industry experience. The group then brought in Albert Bilello ("Mr. Bilello") to obtain the SBA loan from PNC Bank. PSR ¶ 16.

Soon after construction began, the costs for the project increased, requiring AFHK to seek additional investors for the project. PSR ¶ 19. Additional investors resulted in changes to AFHK's ownership structure. PSR ¶ 19. These changes were never reported to PNC Bank during the loan process, nor was the receipt of additional funds from investors, despite Dharia's knowledge of SBA borrowing limits and reporting requirements requiring notice. PSR ¶ 19.

In February 2005, PNC Bank issued a commitment letter to fund a $1.95 million loan to AFHK. PSR ¶ 20. Even though Mr. Bilello was no longer involved in the project, Dharia instructed another member of AFHK to forge the Bilello signature. PSR ¶ 20. At the July 2005 closing, Mr. Bilello agreed to sign loan-related documents and attend the closing in exchange for $10,000 in cash. PSR ¶ 20. Following receipt of the loan funds, he used $1.4 million for other projects he was involved in, paid off his personal home equity line of credit and gave money to his wife. PSR ¶ 21.

    b. Other Restaurant-related Fraud

Dharia acquired SBA loans from PNC Bank for Houlihan's projects in upstate New York, Florida, and Texas. PSR ¶¶ 22-26. As a result of mismanagement, misrepresentation of

3

ownership structures and false information on loan applications, PNC Bank incurred losses of approximately $3.4 million from Houlihan's locations. PSR ¶¶ 22-26.

Dharia also applied for a SBA loan from PNC Bank to rebuild a Golden Corral Restaurant in Delaware after a fire destroyed the building. PSR ¶ 27. He misrepresented the ownership structure in connection with this loan. PSR ¶ 27. He was also given a $1,940,000 loan for acquisition of a Dunkin' Donuts franchise location in New Jersey, which resulted in significant loss to PNC Bank. PSR ¶ 28.

    c.   Hotel-related Fraud in Florida and Pennsylvania

Dharia acquired hotels in need of remodeling through financing from Fidelity Bank of Florida ("FBF"). PSR ¶ 30. Each of the five FBF loans contained false ownership structure information. PSR ¶ 30. Each project resulted in a bankruptcy filing. PSR ¶ 30.

He separately acquired multiple hotels in Pennsylvania and funded the restoration projects through various multi-million dollar loans issued by FBF. PSR ¶¶ 32, 35, 40, 44, 47. Following investigations, consistent default on loan payments and bankruptcy proceedings, all Pennsylvania-based hotel properties were sold on "short sales." PSR ¶¶ 34, 39, 43, 46, 50.

    d.   False Statement in a Tax Return

Defendant underreported his 2006 income by $1,527,408. PSR ¶ 51. Of this amount, $497,770 was taxable, resulting in a tax obligation of $77,395 for 2006. PSR ¶ 51.

    e.   Obstruction of Justice

After a federal grand jury subpoena had been served on Dharia's then attorney, Dharia destroyed 35-40 boxes of documents related to the subpoena. PSR ¶ 52. He and his wife took additional boxes to India. PSR ¶ 52.

f. Conspiracy to Commit Mail Fraud

In early 2010, defendant, as a principal of CJM Hospitality LLC ("CJM"), purchased the Hitching Post Inn in Wyoming for approximately $1 million. PSR ¶ 53. His business partner at CJM took out a $13.6 million insurance policy on the property. PSR ¶ 53. Investigators determined that because of a lack of sufficient funds to complete the renovation of the property, he and his partner hired a third person to destroy the property in order to collect the proceeds from the insurance policy. PSR ¶¶ 54-60. The Fireman's Fund Insurance Company made an initial payout of $50,000. PSR ¶ 60. Because the insurance company suspected arson, no additional monies were paid. PSR ¶ 60.

g. Guilty Plea

On August 14, 2014, Dharia pled guilty to Counts 1 through 4 of a four-count information under Docket Number 14-CR-390. PSR ¶ 1. Count 1 charged him, together with others, with executing a scheme and artifice to defraud PNC Bank between January 2003 and December 2009, to obtain moneys, funds, credits, and other property owned by and under the custody and control of PNC Bank by means of materially false and fraudulent pretenses, representations and promises, in violation of 18 U.S.C. § 1344. PSR ¶ 2.

Count 2 charged him, together with others, with conspiring to execute a scheme and artifice to defraud Fidelity Bank of Florida between January 2006 and December 2010, to obtain moneys, funds, credits, and other property owned by and under the custody and control of Fidelity Bank of Florida by means of materially false and fraudulent pretenses, representations and promises, in violation of 18 U.S.C. § 1344. PSR ¶ 3.

Count 3 charged that on November 21, 2008, within the District of New Jersey and elsewhere, Dharia made and subscribed a U.S. Individual Income Tax Return, Form 1040, for

the calendar year 2006, in which he submitted $1,527,408 in fraudulent deductions, in violation of 26 U.S.C. § 7206 (1). PSR ¶ 4.

Count 4 charged him with corruptly altering, mutilating, and concealing one or more documents (emails, bank loan documents, investor-related documents), between January 2011 and October 2012, with the intent to impair the integrity and availability of the documents for use in an official proceeding in violation of 18 U.S.C. § 1512 (c)(1). PSR ¶ 5.

On July 29, 2015, District of Wyoming Docket Number 14-CR-217 was transferred into this district and re-docketed as Docket Number 15-CR-367. PSR ¶ 6. On September 1, 2015, Dharia pled guilty to count 1 of a six-count indictment under Dkt. No.15-CR-367. PSR ¶ 7. Count 1 charged Dharia with conspiring to engage in the following between August 1, 2010 through September 23, 2014: (a) mail fraud for the purpose of executing a scheme and artifice to defraud, send, and deliver a false and fraudulent claim based on the arson of the Hitching Post Inn, in violation of 18 U.S.C. § 1341, and (b), wire fraud for the purpose of executing and attempting to execute a scheme and artifice to defraud, by transmitting and causing to be transmitted various cellular telephone calls and an email on September 15, 2010, for the purpose of initiating a false and fraudulent insurance claim based on the arson of Hitching Post Inn, in violation of 18 U.S.C. §§ 1349, 1341, and 1343. PSR ¶ 7.

Counts 2 through 6 of Dkt. No. 15-CR-367 were dismissed on motion of the government at the sentencing hearing.

h. 5K1.1 Letter

The government submitted a 5K1.1 letter on behalf of defendant detailing his cooperation. *See* U.S. Department of Justice 5K1.1 Letter ("5K Letter"). In effect, it suggested no prison time.

In 2010, federal agents began investigating Dharia and others for their involvement in bank fraud related to the Houlihan's Atlantic Terminal location. *Id.* at 1. The defendant began cooperating in the summer of 2012. *Id.*

Since his initial proffer in 2012, Dharia has been forthcoming about his criminal conduct and has worked proactively with the government to develop various investigative leads. *Id.* at 6. He has met with the government repeatedly and has provided documentary and electronic evidence. *Id.* He traveled to India to retrieve documents that assisted the government in its investigation, and he has endeavored to disgorge illegal proceeds of his criminal conduct, resulting in over $3 million in forfeiture payments. *Id.*

    i. Sentencing

A sentencing hearing was held on March 5, 2018. Fifteen of Dharia's family members, friends, and business associates were present to support him. Hearing Transcript ("Hr'g Tr.") 3:5-24.

Representatives of probable victims were also present. Hr'g Tr. 4:4-18. Three made statements at the hearing. Hr'g Tr. 12:21-14:11; 15:21-21:21; 22:8-28:25.

The proceeding was videotaped. *See In Re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) ("The sentencing hearing normally requires that the defendant be observed for credibility, mental astuteness, physical characteristics, ability to withstand the rigors and dangers of incarceration, and a myriad other relevant factors. In many instances, it is necessary to observe the employer's and familial ties to the defendant. A judge applies mental impressions of many tangible and intangible factors when imposing a sentence.").

III. Offense Level, Category, and Sentencing Guidelines Range

Counts 1 and 2 (Bank Fraud), Count 3 (False Statement In A Tax Return) of Dkt. No.14-CR-390 and Count 1 of Dkt. No. 15-CR-367 are grouped under the guidelines. USSG § 3D1.2(d); PSR ¶ 71. USSG § 3D1.3(b) states that the guideline that results in the highest offense level is used. PSR ¶ 71.

The guideline with the highest offense level for the instant case is §2B1.1. PSR ¶ 72. The base level offense is 7. PSR ¶ 72; §2B1.1(a)(1). For guideline purposes, the defendant is responsible for a total cumulative loss of $32,560,664.03. PSR ¶ 73. Pursuant to Guideline 2B1.1(b)(1)(L), 22 levels are added because the loss was more than $25,000,000. PSR ¶ 73.

Defendant obtained more than $1,000,000 in gross receipts from one or more financial institutions; as a result, 2 levels are added. *See* 2B1.1(b)(16)(A); PSR ¶ 74. Because defendant was an organizer or leader of a criminal activity that involved five or more participants, 4 levels are added. *See* USSG 2B1.1(b)(16)(A); PSR ¶ 76. He obstructed justice by destroying and hiding boxes of documents after being served a federal jury subpoena, which increases the offense level by 2. USSG §3C1.1; PSR ¶ 77. The total adjusted level for Counts 1-3 of Dkt. No.14-CR-390 and Count 1 of Dkt. No. 15-CR-367 is 37. PSR ¶ 78.

The guideline for Count 4 of Dkt. No. 14-CR-390, obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), is USSG §2J1.2. PSR ¶ 79. According to the cross reference of Guideline 2J1.2(c)(1), if that offense involved obstructing the investigation or prosecution of a criminal offense, Guideline 2X3.1 (Accessory After the Fact) is applied, if the resulting offense is greater than that determined by application of Guideline 2J1.2. PSR ¶ 79. Guideline 2X3.1(a)(1) provides a base offense level 6 levels lower than the offense level for the underlying offense. PSR ¶ 79. The offense level for the underlying offenses in Counts 1-3 of Dkt. No. 14-

CR-390 and Count 1 of Dkt. No. 15-CR-367 is 37. The base offense of Count 4 is accordingly 31. PSR ¶ 79. Count 4 is grouped with the above offenses. USSG 3D1.2(c); PSR ¶ 85.

The offense level was decreased by two points for acceptance of responsibility, and by one point because of timely notice of a plea bargain. USSG § 3E1.1(a); USSG § 3E1.1(b); PSR ¶¶ 91-92.

The total adjusted offense level is 34. PSR ¶ 93. Dharia has no known criminal convictions apart from the instant offense; his criminal history category is I. PSR ¶ 96. This results in a Guideline imprisonment range of between 151 and 181 months.

IV. Law

    a. Minimum Guidelines

A district court is permitted to sentence below the minimum Guidelines, but shall state its reasons for "imposition of the particular sentence." 18 U.S.C. § 3553(c); *see generally U.S. v. Booker*, 543 U.S. 220 (2005). Reasons must be stated in open court, as well as in "the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2). "The court shall impose a sentence sufficient, but not greater than necessary, to comply" with the policy of the sentencing statutes and guidelines. 18 U.S.C. § 3553(a).

V. 18 U.S.C. § 3553(a) Considerations

Dharia is a 53 year old naturalized citizen with no known previous criminal history. He immigrated to the United States in 1987 to study at the Stephens Institute of Technology. PSR ¶ 104. He was naturalized in 1996. *Id.*

He married in 1998. *Id.* at ¶ 105. The couple has two daughters together. *Id.* They divorced in 2011 to protect his wife from creditors, but still live together. *Id.* at ¶¶ 105, 107.

Dharia has a bachelor's degree in engineering from a university in India and a master's degree from the Stephens Institute of Technology. *Id.* at ¶¶ 113-14. He has been self-employed for most of his life; his work is directly related to the instant convictions. *See supra* Section II.

At the suggestion of the prosecution in its 5K letter and at the sentencing hearing, given defendant's expression of genuine remorse, his extensive cooperation with the government, and the significant amount of restitution and forfeiture, a non-incarceratory sentence adequately reflects the seriousness of the offense, provides adequate deterrence from future criminal conduct, protects the public from further crimes, and properly considers the defendant's personal circumstances. *See* 18 U.S.C. § 3553(a)(2)(A-D).

VI. Sentence

Dharia was sentenced to no term of incarceration. A term of incarceration would delay payments of restitution and other debts.

He received three years supervised release concurrent. He shall pay $5,151,755.37 in restitution on count 1 of Dkt. No. 14-CR-390 ($3,863,816.53 to the Small Business Administration and $1,287,938.84 to PNC Bank); $6,113,343.09 on count 2 to Fidelity Bank of Florida, and $77,395 on count 3 to the IRS. A $8 million dollar forfeiture order was imposed concurrently on counts 1 and 2. A $1 million concurrent fine was imposed. A $500 special assessment was required. In connection with Dkt. No. 15-CR-367, Dharia has paid $50,000 in restitution to the Fireman's Fund Insurance Company. *See* Hr'g Tr. 32:20-33:6.

VII. Conclusion

All relevant issues under the guidelines have been considered. Special attention was given to factors listed under 18 U.S.C. § 3553(a) to ensure a sufficient, but "not greater than necessary" sentence.

Defendant admitted to his conduct and cooperated extensively with the government. The government submitted a 5K1.1 letter suggesting that no prison time be imposed. At sentencing, all parties agreed that the sentence would adequately serve punitive, recidivist, and rehabilitative concerns.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 27, 2018
Brooklyn, New York